Johnson, J.
The petition averred that the defendant employed the plaintiff to negotiate the contract which the parties thereafter entered into. The defendant in its answer denied the employment.
The first question for the court to decide, therefore, on the motion of the plaintiff for judgment, was whether the evidence offered by the plaintiff *408 tended to prove the contract of employment. Plaintiff testified that he was so employed by Young, the general manager of defendant. The president of the company, who was called as a witness, denied that the general manager had any authority to make such a contract. But the record discloses a number of telegraphic communications between the plaintiff and the defendant company touching the general subject, and thereafter, Young, the general manager of the defendant, entered into a written contract with the Aetna Company for the sale to it by defendant company of the acid referred to in the petition. In this contract it is. expressly provided “brokerage of one per cent, on this sale -to .be paid by seller to Eugene Suter as payments are received.” This contract bears the signature of the two companies, seller and purchaser. Thereafter the defendant ratified this contract made by its general manager by entering upon its performance and by the payment to Suter of certain commissions in accordance with its terms.
The right of a broker to compensation rests upon contract, express or implied. The burden is upon him to show that his services were rendered under employment by the principal, or that the principal accepted his agency and his acts, under circumstances indicating that he knew the services had been rendered on his account, and while the agent was relying on the principal’s obligation to pay him. If his services were rendered without employment, express or implied, as a mere volunteer and without acceptance under the circumstances *409 named, he cannot recover. In this case there was not only ratification of plaintiff’s -employment and acts, but a written agreement to pay a specific compensation for the services he had rendered. We think it clear that the employment of Suter was shown by the plaintiff’s evidence. But the defendant contends that it has paid plaintiff the •full amount due as commission on all moneys received by it from the Aetna Company under the contract, •The court of appeals entertained the view that this was not an action upon the ordinary broker’s contract, where the broker merely agrees to furnish a party able and willing to enter into a contract, but that in the case at bar “the broker’s commission was dependent upon payments being made by purchaser on goods furnished under the contract.” As we view the case the decisive question relates to the construction of the language, “brokerage of one per cent, on this sale to be paid by seller to Eugene Suter as payments are received.” Was this provision “as payments are received” intended by the parties to fix the times of payment of the commission in installments, or was it inserted as a condition precedent that the payments due from the Aetna Company should be received by the defendant from time to time?
It will be observed that the contract of sale was complete. So far as the obligations of the parties to the contract of sale are concerned they were fixed by the terms of that contract. The quantity of goods sold and the price were fixed» Under its terms the negotiation of the sale was complete and there was nothing further for the plaintiff to do. *410 His rights were determined by that contract. The amount to be paid him was fixed, to-wit, one per cent, on the sale to be paid by seller as payments are received. The obligation of the defendant to pay him was final when defendant had entered into the contract of sale with the purchaser procured by plaintiff. The fact that the contract between seller and buyer provided for the payment of the agent’s commission in installments, that is, “as pajunents are received,” did not change or limit the absolute liability of the seller to the agent. It was perfectly competent for the defendant and plaintiff to provide that the plaintiff should only receive one per cent, upon such sums as the purchaser actually paid the seller on the price, but they did not do so. The one per cent, was to be on the sale.
The defendant in error points out -the distinction between a sale and a contract for sale, and cites authorities which discuss the distinction. Its essential importance relates to the transfer and the passing of the title in goods contracted to be sold. The distinction is recognized and carried into our statutes, Section 8381, General Code. But these rules can have no application to this case. In this case the only thing involved is the compensation of the plaintiff agent, and that compensation is definitely fixed by the contract itself. The employment of plaintiff, the performance of his part of the contract by the' production of the purchaser with whom,the defendant contracted, and the compensation, are all evidenced by the written instrument signed by the parties.
*411 As to the effect of the subsequent contract of settlement between the defendant and the Aetna Company, under which the original contract was canceled for the consideration of $45,000, paid by the Aetna Company to the defendant, it will be noted that the plaintiff was not a party to and had no connection with that arrangement. The rule is familiar, based upon unquestioned authority and sound reason, that where the -obligations of a contract have attached, and one party, without the consent of the other, does some act or makes some new arrangement which prevents the carrying out of the’contract according to its terms, he cannot avail himself of this conduct to avoid his liability to the other party to the contract. • Even where the liability depends upon a condition precedent one cannot avoid his liability by making the performance of the condition precedent impossible, or by preventing it. So here the subsequent contract by which the Aetna Company was relieved of further liability on its contract by the payment of the $45,-000, while perfectly proper and binding on the parties to-the subsequent contract, did not in any wise affect the rights of the plaintiff.
The defendant avers in its answer that the Aetna Company became financially embarrassed and threatened with bankruptcy; that the defendant made the settlement releasing the Aetna Company for $45,000 in order to save itself and plaintiff from loss on account of acid shipped and not paid for; that the Aetna Company was placed in the hands of a receiver shortly thereafter and' is .now in process of liquidation. The reply admits the *412 making of the agreement whereby the Aetna Company paid the defendant the sum of $45,000, and that the Aetna Company is now in the hands of a receiver, but states that plaintiff has no knowl•edge as to any disputes or controversies between the defendant and the Aetna Company respecting the Carrying out of the provisions of their contract, and, therefore, denies the same.
There is no allegation in the answer of the defendant that the Aetna Company at the time of the making of either the original or the settlement-contract was not solvent or financially able to make the purchase contracted for; nor that the acceptance of the purchaser by the defendant was made by it while relying on assurances of its agent, the plaintiff, that he had found a purchaser ready and able to make the purchase. So far as appears from the pleadings, or from thp face of the contract, or the testimony, the defendant entered into the contract with the purchaser relying on its own investigation and knowledge of the ability of the Aetna Company to carry out the contract, and because it was satisfied with the purchaser procured by the plaintiff. Under such circumstances the release of the Aetna Company from further performance of the contract on its part for the consideration named, would entitle the plaintiff to the immediate payment of his commission from the defendant. When the defendant rested its case at the close of the plaintiff’s evidence, and thereafter each of the parties moved the court to direct the jury to return a verdict in its favor, that action *413 b-y both parties operated to waive the jury and submit the case to the court on the evidence already in.
For the reasons given we think that the trial court erred in directing the verdict in favor of the defendant, and that the court of appeals erred in affirming the judgment entered thereon.
In view of the construction of the contract and of the legal effect of the facts disclosed, which we have above indicated, and which we think is required by correct interpretation, it became the duty -of the court to render judgment in favor of the plaintiff for the amount claimed.
' The judgments of the-courts below will be reversed and the cause remanded to the court of common pleas with instructions to enter judgment for that sum.

Judgments reversed, and 'cause remanded.

Nichols, C. J., Jones and Robinson, JJ., concur.
Merrell, J., not participating.